Good morning, your honors. May it please the court, my name is Joel Bertocchi and I represent the defendant and the appellate in this case, Arrow Financial Services. The district court in this case found that the Arrow letter contained three objectionable statements. The court found that it threatened to report the debt to credit bureaus, that it threatened to report negatively if the debt was not paid, and that it made a statement that the debt either had been or would be reported. Now, everyone agrees, the plaintiffs, the defendant, and the district court, that the Arrow letter does not say that. Indeed, the plaintiffs concede in their brief that the letter is silent on the issue of whether the debt would be reported in any way. Instead, the district court concluded, and the plaintiffs argue, that it is naturally to be inferred. But it cannot be inferred from any language in that letter. The language at issue is plain and simple, and it was unreasonable to conclude that the debt would be reported in any way. The letter is upon receipt of the settlement amount in clearance of the funds, and if we are reporting the account, the appropriate credit bureaus will be notified that this account had been settled. That's correct. At the time you wrote the letter, you were not reporting it because you were way beyond the seven years. That's right, your honor. Why would you include that? Your honor, I don't know why it was in there. I can't say. The record doesn't disclose it. It's a full. The district court, I mean, drew the obvious suggestion that you included it because you were trying to pressure the people into making payments that, as to action, you weren't going to take. Well, your honor, the, as plaintiffs frequently point out, the FDCPA is a strict liability statute. What we intended doesn't matter, which is probably why there's nothing about it in the record. Well, if that's how an unsophisticated reader would take it, it doesn't matter what we intended. Well, going beyond what your intent was, wouldn't an unsophisticated, least sophisticated reader take that to be that you either were reporting or could be reporting? No, your honor. In fact, what the letter says is if we are reporting, we'll report it if it's settled. If is not the same as when, and that's kind of what this case is about. They're small words, but it's a big difference. What the letter says. I'm sorry. Go ahead. I was going to say what the letter says about the subject of reporting is the letter does not say. By using the word if, it says this letter is not telling you whether this debt will be reported. And at that point, the reader would have several options if the reader would care at all. The reader could do what the plaintiff did. The reader might know, as the plaintiff did, that it's not reportable and not worry about it. The reader could do what the plaintiff also did, which is call the 800 number in the letter and ask and be told that it would not be reported. But the affirmative statement in the letter amounts to we are not, this letter does not answer the question, is this debt reported? I guess given the standard of review that we have, we have one bunch of verbiage that's in the letters. But the second part is on the reverse side where it says, as required by law, you're hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations. Your Honor, I. And we're talking about whether the least sophisticated debtor would likely be misled by this communication? That's right, Your Honor. There is nothing, the least sophisticated debtor, as the cases say, is somebody who has to read with care, who can make logical deductions. The statement that you just read is a general statement. It doesn't refer to the particular debt that's addressed in the letter at all. And the sentence that does refer to it. It's on the reverse side of the more specific, isn't it? Sorry? It's on the reverse side of the more specific portion talking about the individual debt. It's on the reverse. Yes, it is, but it's still a general statement. And it doesn't take a lot. I'm sorry, Your Honor. When we get through all of this garbage, why was the letter sent? Your Honor, the letter was sent in an attempt to get people to pay a debt. And you had bought the debt at some major discount, right? I imagine they did. I don't know, Your Honor, but I assume that's correct. Some discount. I don't know what it was. And I guess it couldn't be collected. It couldn't be enforced, Your Honor. The case law is clear that a debt can be 100 years old and you can still try to get it collected. It can't be enforced. And so there's nothing improper about trying to collect the debt. The only thing that was focused on by the district court and was focused on in its motion to dismiss the summary judgment decisions was that particular sentence. And I think an instructive comparison is one actually that's made by the plaintiffs in this case. They cite the red case, which is a district court decision from my home district in Chicago, where Arrow was the defendant. And Judge Houston cited that also in his decision at page 71 and 72 of the excerpts of record. The letter in the red case said, if you settle this debt, we will report it. But those were also unreportable debts, and so that was a promise of an incentive that could not be delivered. This case, the language is different. It says, if we are reporting, it specifically leaves the question open. And we're not talking about complex language here. Sophistication and reasonableness are not the same thing. And while they may overlap, you don't have to be especially sophisticated to know what if means as opposed to when. And you can be required to read with care and make basic logical deductions. And anyone, no matter how sophisticated, if they were reasonable, would read that sentence and say, this isn't telling me if they're reporting. I need to look elsewhere if I want to find out what the answer to that is. Let's turn to the second part of your argument, if you will, to the Rosenthal Act. The Rosenthal Act. Sure, Your Honor. Why doesn't 1692N of the FDCPA permit Gonzalez to recover cumulative damages under the state law? Your Honor, we don't believe we think it doesn't for two reasons. One is state law itself, the Rosenthal Act, has an express limitation to individual claimants. And we think that if he was an individual claimant, he might well be able to. But in a class action, he can't. When the Rosenthal Act was amended, that letter, that specific damage limitation remained on the books and remains on the books to this day. Well, what about the language notwithstanding any other provision, and then the following language that class actions are allowed? I mean, what's the import of the language notwithstanding any other provisions of this title? You mean in the FDCPA or? I'm sorry. No, in the California Act. In California. Your Honor, I don't think that can be read to displace the express limitation, which was not repealed, of 1788.17, I think, which says individual actions only. The other problem is that allowing that kind of interpretation in a class action case would contradict two policies of the FDCPA that should have preeminence. One is the award limit, because while an individual cumulative award is unlikely to bump up against the award limit in the FDCPA, doubling a class action recovery might well do so. And one of the objectives of the award limit was to make sure that debt collectors who violate the law are penalized but not broken by a class, by a recovery. Did this one come up near the award limit? No, it didn't. No, it didn't, Your Honor. But that's. But then. But the statute doesn't distinguish in that way. Well, then, if the cumulative damages under FDCPA and the Rosenthal Act don't exceed the cap, why shouldn't the FDCPA permit the recovery? Well, Your Honor, I guess that would be a good fallback position for us, but there's no support for it directly in the statute. All I understand is the logic of what you're saying. Those are the tough questions that I need you to answer in order to follow the law. Well, my answer. That's where you're going. There's no language in the statute that supports applying that limitation. But there is logic to it. And as Judge Wynn points out, in this case, this award didn't bump up into it. We're just talking about statutory interpretation of this issue, though. So the statutory interpretation automatically eliminates it? Well, no, I don't think it. I didn't get that to be your argument. I don't think it. And so, therefore, I'm having a tough time arguing. Well, Your Honor, I guess what I'm saying is that the limitation in the FDCPA is a limitation on recovery in FDCPA suits. And it would certainly be more consistent to apply that limitation to a Rosenthal Act recovery also. But our argument really, our more foremost argument is that the we're interpreting the statute generally as a question of law, not as applied in a particular case. And in a particular case, it has the potential of rubbing up against that policy. The other policy is that there be consistency. And as we pointed out in our brief, other states don't allow double recoveries. And it shouldn't be a different rule in California if the goal of the FDCPA is to provide debt collectors with a consistent set of rules to follow. Your Honor, I'll reserve the remaining of my time for rebuttal if I may. Thank you. Thank you. May it please the Court. My name is Richard Rubin, and with me today are trial counsel Sean Kajian and Elizabeth Arleo, and we represent the plaintiff appellee, Johnny Gonzalez. Your Honor, counsel started off by mentioning that the trial court in this case found three objectionable statements. Let me first emphasize that under the FDCPA, where only one violation of the law is necessary to establish liability, that we need only establish the one to affirm the case below. And in this case, that can be done a number of different ways, including all three that Judge Houston defined. I would point out to the Court that after all of this argument, all of this briefing after six years where the defendant in this case has been claiming that one should not be able to, that its phraseology of constructing its threat to report to the credit bureau is couched in a conditional statement, that somehow or other that would not mean to the least sophisticated consumer that there's some possibility it applies to him or her, that that is actually, that there will be some reporting. After all of that, in the reply brief on page 9, first sentence of the first full paragraph, the defendant states, and I quote, all the letter actually said, close quote, is that they, quote, would report the debt as settled. They've now conceded, as is obvious to everyone and is the ruling below, that of course they're making a threat, a promise, a representation that they will report to the credit bureau, and they've stipulated throughout that they had no intention of ever reporting these time-barred debts to the credit bureau. That is the end, frankly, of the analysis that needs to be done for the first question on appeal to affirm. They made a false statement of what they intended to do and what they would do, and that is foreclosed by their formal stipulations below. Your Honor, Judge Fletcher and Judge Gwynne, you asked why would they do this. Counsel just gave the answer. He said what they should have done was called the debt collector, arrowed, find out. As he said, Mr. Gonzales did. Mr. Gonzales, an extremely sophisticated consumer. And as we mentioned in the brief, but for Mr. Gonzales's efforts, this deception would have gone unnoticed because Mr. Gonzales once worked in the finance industry. But the answer was clear. He said they should have called the debt collector. That's what debt collectors are trying to do on 13-year-old debts. They want people to make contact. They want to give them a little bit of a prodding. That's why the credit reporting is such an effective device to get people to pay their debts. People often see a debt on their credit report. They haven't even been contacted about, but they're trying to get a job or an apartment or a credit card, and they get their credit report and they see this debt reported there, and they initiate the contact with the debt collector. This Court has stated in its Federal Trade Commission precedent that there is no obligation on a consumer to ask a question, to call the business, to ask them what do you mean. That is exactly, and that's not required, and that is one of the reasons why this is such a pernicious violation and activity that Arrow was engaged in here. They were actually, and for counsel to come in here and tell us today that that is what these consumers should have done was to call in order to clarify the meaning. Are you in fact reporting this debt on my credit report is remarkable, frankly. Is there a conflict between the Rosenthal Act's limitations and the provision of the Federal? None whatsoever, Your Honor. Not at all. As the Federal, the FDCPA in its savings provision, 1692N, says very clearly, as clearly as it could, we do not preempt or impact any State law except as to inconsistent provisions. In this place, it's obviously inconsistent, right? No. Rosenthal's Act limitation on who can make claims. I'm sorry, I don't understand. I mean the provision in the Rosenthal Act limiting claims to individuals. Oh, I'm sorry. Yes. No, I understand the question. As to the Rosenthal Act, the Rosenthal Act has the provision that says nothing in this Act. It says all remedies shall be cumulative, and that's the question is what does that mean? What defendant has done here is looked to the fact that that provision and the individual liability provision of the Rosenthal Act existed prior to the adoption by the California legislature of the FDCPA. There is no question that there is room to find ambiguity as to whether class actions are allowed at all under the Rosenthal Act. Judge Houston acknowledged that and then resolved it and said no, and consistent with, I believe, three or four other reported District of California cases, said no, that is I'm going to resolve that ambiguity in favor of finding coverage. Among the very convincing evidence was, of course, and California has very extensive legislative history, Judge Houston referred to it, and one of the committees in the California legislature said expressly, expressly we intend this to apply to class actions. Let me ask you a question. What section of the FDCPA permits cumulative recoveries? Well, between State and Federal law? Yes. 1692N. Well, if it's 1692N says a State law is not inconsistent if the protection such law affords any consumer is greater than the protection provided by the subchapter, correct? It does. What it says is that only inconsistent laws are preempted. And then it says. Well, but doesn't that refer really to substantive legal protection and not statutory damage awards? Well, it's the second sentence certainly does. The first section is much broader. The first, the general, the normative rule is that there is no preemption of State law, period. Well. And that's, of course, consistent with most Federal statutes, absent something in the statute itself. There's nothing in the statute to suggest that this is preempted, and that's the separate solvents. Well, I guess we're really arguing about what this notwithstanding says and what it means. That's what we're really arguing about. So we got the notwithstanding, and then we go to 16N and it says a State law is not inconsistent with this subchapter if the protection such law affords any consumer is greater. But the statute doesn't say a State law is not inconsistent if the damages such State law affords any consumer is greater than the damages provided by this chapter. It doesn't say that. First of all, I would suggest, Your Honor, that the protections means the whole gambit of State law. And that's what I'm supposed to read that to mean? I think one can. The damages? The remedy is part of the protections. Yes, sir, Your Honor. Particularly under both FDCPA and the Rosenthal Act, it relied virtually exclusively on private attorneys general. What part of section 1692N would give its blessing to cumulative statutory awards? Again, Your Honor, 16 at the very beginning. 16N. N. You're just talking about the first phrase? Well, no, the whole thing, but the relation. I've taken you through the other things. That's right. And I can't find it, so I'm trying to find the clause. Well, I tell you, I have several responses. One is that a Federal statute does not have to make that affirmative statement. It would be the opposite that we'd be looking for, or field preemption. And no one suggested anything like that here. Second is that the first provision, that the rule that Congress did state is that State laws are not going to be impacted by this statute except to the extent that protections. It's an exception to the rule. And the exception is maybe, well, even narrower than I was suggesting, and even goes to the very specific item, Judge Smith, that you're suggesting, that they went out of their way. Congress went out of its way to say only, only the substantive protections will be preempted, and only to the extent they are inconsistent. So there's no suggestion at all in N that there would be any preemption whatsoever. It's not field preemption. It's not specifically preempted. That's typically the answer in a Federal statutory construction as to – and there's certainly nothing inconsistent. That's the other point. There's nothing inconsistent about the award. Counsel mentioned that several States don't allow. If I were to read the FDCPA to prohibit cumulative recovery, shouldn't the FDCPA then trump the Rosenthal Act as to that particular issue? If Congress expressly stated or field preemption, which they've never argued. Well, I didn't say anything. For the notwithstanding language that is put in this statute. I mean, it's California's own legislature that throws this notwithstanding language on top of us, and we're now trying to understand what that means. Now, if I read the FDCPA and it impliedly prohibits cumulative recoveries, which I think it does, then shouldn't the FDCPA trump here? If the Court were to find that the Federal statute prohibited cumulative recoveries for the same misconduct under State – under Federal State law, then Federal law is supreme. I would not object to that, of course. But there's no basis to find that here, frankly. That's our argument.  I was going to finish, Judge Green, the – as to the Rosenthal Act. The Rosenthal – the construct that was – that the defendants have made here is to take the ambiguity on whether class actions are allowed, which they have now acceded into, not appeal from Judge Houston's decision that they are allowed, taken that ambiguity, which they now accept, and attempted to bootstrap that into whether the remedies are cumulative. And that's the answer. The State – California law says that all remedies – that the remedies here are cumulative to all other remedies available. That could not be clearer. The question is whether that provision applies to class actions. Judge Houston answered that question, as have the other Federal judges that have addressed it in California. And having now – with that now being the law of the case, there is no basis to I would point out also, I think, that, again, the couching – back to the first issue – the couching of the deception in conditional terms has been so broadly and uniformly and unanimously condemned by the Federal courts, both under the FDCPA and under the Federal Trade Commission Act on which this builds. Judge Gwynne, as you – I presume you know that – of course, you don't have to. I know you've read the brief that the Sixth Circuit in Kistner adopted, as well as every other circuit that has looked at the issue, the more than one reasonable interpretation test to help determine what a least sophisticated consumer would understand a representation to imply. To say – and that was applied specifically by the Third Circuit in the Brown case to the conditional formulation. That's what's so striking here, that they say, if we're reporting the debt, and then they say, but we didn't really mean this to apply to you, to 40,000 people whose accounts, whose computer cards they flagged as being unreportable. They sent out this individualized mailing to 40,000 people who they had to put their names and addresses and the amount of the debt and all the individualized information that comes in, and yet they decided to use a template that has a credit reporting threat in it, a credit reporting mention. I won't beg the question. It has a credit reporting mention in it when they knew that had no application whatsoever to these 40,000 people. Frankly, it would be inexcusable without parsing motive and looking at motive, looking at why they would do this. When Judge Gwinn, you asked about the discount in this case, the – again, the defendant stipulated to everything they could to keep the plaintiffs in this case and the jury from finding out how much they paid for this. But there is an open market on distressed debt is what's called in the business. There's an open market. This is 13-year-old debt for Mr. Gonzalez, who is maybe not average, but he's representative. We know that it's time-barred debt. It's obsolete debt. There was an article in the New York Times last year that said that the market, at least last year, for this kind of distressed debt was as low as a half a cent of the dollar that they paid for this portfolio. And why did they pay that for such old debt? In order to get people to call them, to tweak them, to tell them that other honest debt collectors,  in this case, and that the Supreme Court, last year in German, highlighted that the anti-competitive purpose of the FDCPA is to protect the law-abiding debt collectors, that this company went very, very – knew they were going very close to the edge, to quote the Swanson case from this Court, quoting the Supreme Court FDCPA case. They intentionally went to the edge. They had the red decision in front of them. They knew they shouldn't be playing the credit reporting card on these obsolete debts. And they should not be surprised that when they intended that people interpret this as referring to them, that they should not – when they made that – had that intent, they shouldn't be surprised that the Court should find that that's the impact. Thank you. Thank you, Your Honors. Your Honors, we're still talking about intent, and I find it odd. Plaintiffs always argue in these cases that intent is irrelevant, but they can't make their argument without it. What they want you to believe is they meant something bad, and so you should find something bad. But the question to be reviewed here is what would, objectively, what would a reasonable but unsophisticated debtor think when they received this letter. In the end, mention is exactly the right word. All there is in this letter that the district court seized on and that the plaintiff seized on is the fact that the subject of credit reporting is raised. And a holding that mentioning credit reporting is – merely mentioning without regard to context, in the context of an unreportable debt, would be an extraordinary holding, I think. It would contradict all of those cases that talk about other potential hot-button issues like legal action or the involvement of an attorney that say that it's not enough to just mention a subject. You have to look at what is said about the subject. We wanted them to make contact. Most business letters are probably designed to elicit contact, whether they're to consumers or other people. There is no obligation. Mr. Rubin is correct, but the letter doesn't say there's any obligation to call. None of that is in there. The district court's decision and the plaintiff's argument are all about things that aren't in the letter and that are not reasonably read to be in the letter. That's all I have, Your Honor. Thank you. Thank you. Case 10-55379, Gonzales v. Arrow Financial Services is submitted. Judge Smith, I would like to take a five-minute recess. You bet, Judge. Thank you very much. We'll take a five-minute recess. Thank you, Your Honor. All rise for a sign of the recess for five minutes.
judges: Gwin, Fletcher B. , Smith N. R.